**STATE of Minnesota, Respondent,**

v.

**Melvin PITTEL, Petitioner, Appellant.**

**No. C4–93–1359.**

Supreme Court of Minnesota.

June 30, 1994.

Rehearing Denied July 28, 1994.

---

John R. Wylde, Calhoun Square, Minneapolis, MN, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, MN and Michael O. Freeman, Hennepin County Atty., Patricia A. Moses, Mark V. Griffin, Asst. Cty. Attys., Minneapolis, MN, for respondent.

## OPINION

KEITH, Chief Justice.

As a result of the court of appeals' unpublished decision in this case, which granted defendant Melvin Pittel relief from some of his multiple convictions, *State v. Pittel,* 1994 WL 146211 (Minn.App., filed Apr. 26, 1994), defendant stands convicted of six counts of theft and faces concurrent sentences of 15, 18, 21, 19, 32 and 82 months in prison. The 82–month term is the result of a double durational departure from the presumptive sentence of 41 months for the original eighth count. We hold that the trial court had no basis for doubling the 41–month sentence but could have doubled the 32– (30–34) month sentence. As a result of our decision, the longest term that defendant will have to serve is 68 months, double the maximum presumptive sentence duration for the fifth of the six offenses.

Defendant has worked on and off in the travel business since his college days. In 1975 his first travel agency went into receivership, and he later pled guilty to theft by swindle involving the fraudulent sale of airline tickets. In 1987 a cruise business of his went into bankruptcy. He then opened another cruise business, Cruises & You!, Inc. It was in operating this business that defendant committed the current offenses.

The convictions are based on defendant's conduct in a series of transactions with a woman named Gail Gayda, operator of her own travel agency in Indiana. In March of 1989 she arranged a cruise for members of an American Legion Post but was told by the cruise line that the cruise was overbooked and that she would have to try elsewhere. Gayda heard about defendant, who operated as a wholesaler of cruise packages. Defendant agreed to make the arrangements for her with Commodore Cruise Lines and, over a period of time, directed her to transfer funds to him. Defendant was then supposed to forward these funds (minus his commission) to Commodore Cruise Lines. Amounts sent by Gayda on various dates were: May 12, 1989: $5,100; June 6: $400; July 21: $6,400; July 28: $12,800; August 4: $1,080; September 1: $25,000; September 19: $4,308.

Defendant used a large amount of the money for personal matters and made only partial payments to Commodore. Gayda and her husband had to borrow money so that she could pay the amount owed to Commodore (otherwise, her customers could not take the cruise) and to refund money to customers who cancelled. The probation officer estimated that Gayda's personal losses exceeded $28,000 plus interest on the loan and attorney fees.

The trial court used the *Hernandez* method[1] to compute defendant's criminal history score. Assuming the propriety of multiple sentencing and the propriety of using the *Hernandez* method, the trial court, without departing, could have sentenced defendant to concurrent terms of 15, 18, 21, 19, 32 and 41 months. The trial court did that but doubled the 41–month presumptive sentence, meaning that defendant is subject to an 82–month sentence.

■ 1. Contrary to what defendant argues, the various thefts were not part of a single behavioral incident for purposes of Minn.Stat. § 609.035 (1992), which prohibits multiple sentences for multiple offenses committed as part of a single behavioral incident. Among the many relevant cases, see *State v. Eaton,* 292 N.W.2d 260, 267 (Minn.1980) (upholding two convictions and two sentences where the defendant, as part of a single scheme to cheat a victim, obtained $12,500 on one date and $30,000 on another date; while it was true that the defendant "had one large plan to swindle as much as possible" from the victim, "that objective is too broad to be a single criminal goal * * * where, as here, a defendant plans and executes the thefts of two different [amounts] at two separate times").

■ 2. The trial court was free to use the *Hernandez* method. We have conceded that "there is some disparity in cases like this stemming from the fact that one prosecutor might let a defendant connected to 50 [crimes] plead to 3 charges * * *, whereas another prosecutor might want to build up the defendant's criminal history score to six or more using the *Hernandez* method." *State v. Litzinger,* 394 N.W.2d 803, 806 (Minn.1986). However, in a number of cases we have made it clear that any change must come from the Sentencing Guidelines Commission. Among the cases allowing the trial court to use the *Hernandez* method in computing the defendant's criminal history score in cases such as this, see *State v. Kirsch,* 338 N.W.2d 45, 46 (Minn.1983) (defendant was convicted of three counts of theft by swindle

for taking more than $20,000 from her employer; court approved use of *Hernandez* method in sentencing defendant for the three counts and doubling the largest of the three presumptive sentences).

■ 3. As we made clear in *Litzinger,* 394 N.W.2d at 805 n. 1, if all the charges are consolidated into one charge for purposes of sentencing, in which case the *Hernandez* rule has no application, then it might be proper to lump all the offenses into one and consider all the underlying conduct together. However, where the defendant stands convicted of a number of offenses, as here, and the *Hernandez* rule is used, as here, it is not proper to consider all of the underlying conduct of all the offenses as bearing on the decision to depart durationally from the presumptive sentence for an individual offense. Stated differently, a prosecutor may not have it both ways; having it both ways, the prosecutor could charge the defendant separately with a large number of offenses and thereby obtain a large number of convictions, which in turn would allow use of the *Hernandez* method to increase the defendant's criminal history score, and the prosecutor could also use the underlying conduct for all of the offenses as support for arguing for a durational departure from the presumptive sentence for one of the offenses.

The problem that we have with the court of appeals' analysis is that it does allow a prosecutor to have it both ways in a case such as this, because the court of appeals upheld the use of multiple charging and the *Hernandez* method but it looked to the conduct underlying all of the charges as support for the durational departure in connection with the last charge.

We conclude that the doubling of the 41–month presumptive sentence cannot be justified by looking solely at circumstances relating directly to the conduct immediately underlying that offense. We believe, however, that the trial court could have imposed a sentence of 68 months for the fifth of the sixth offenses, 68 months being double the

---

**1.** *See State v. Hernandez,* 311 N.W.2d 478 (Minn. 1981); Minnesota Sentencing Guidelines II.B.

101 comment.

maximum presumptive sentence of 34 months. We base this conclusion on the very large amount of the check ($25,000), much of which defendant converted to his own use.

We therefore reduce defendant's sentence for the sixth offense to 41 months but increase the sentence for the fifth offense to 68 months, double the maximum presumptive sentence for that offense, using the *Hernandez* method of computing the defendant's criminal history score.

Affirmed as modified.

TOMLJANOVICH, Justice (dissenting).

I respectfully dissent because, in the absence of an abuse of discretion, I would leave sentencing to the trial court.

Here Judge Posten departed from the sentencing guidelines. Among the reasons he gave on the record were the amount of money involved and the abuse of trust of the victims. Over $4,000 was involved in the count on which Judge Posten departed. He was in a better position than we are to determine if this was a major economic offense in light of the circumstances of the victims in this case.

COYNE, Justice (dissenting).

I join in the dissent of Justice Tomljanovich.